NATIONAL UNION FIRE INSURANCE CO., a Corporation, Appellant, v. J. E. NEVILS, J. T. SINGLETON and C. E. YEOMAN, Respondents.*

In the Springfield Court of Appeals, July 1, 1925.

1. **PLEADING: Demurrers: Petition Held Not Demurrable by Attacking Bond, Basis of the Action, as Indefinite.** Action on bond of insurance agent, alleged to have failed to return to company unearned commissions resulting from the cancellation of policies. Demurrer, setting up that bond was indefinite and did not cover such failure to return commissions. The condition of the bond was not copied in petition, but petition specifically stated that bond did cover such acts. *Held,* the allegations of the petition determine its sufficiency, and not the construction of the bond, it not being copied into petition, hence petition was not open to such objection.

2. ———: **Construction of Bond Sued on, But Not Copied into Petition, Not Involved in Considering Demurrer to Petition.** The con-

struction of a bond sued on, but not copied into petition, is not involved in considering a demurrer to the petition.

3. ————: In Suit on Bond of Insurance Agent, not Necessary to File Agency Contract Therewith. Suit on bond of insurance agent. Objection by demurrer that copy of agency contract between agent and plaintiff company was not filed. *Held*, the suit being on the bond and not on the contract, the bond was the only written instrument that plaintiff was required to file with petition, in view of section 1270, Revised Statutes of 1919.

4. ————: Failure to File Instrument Sued on Not Ground for Demurrer. Section 1270, Revised Statutes of 1919, requires written instrument sued on, and executed by party sued, to be filed with petition, but a failure to file it can only be taken advantage of by motion to dismiss or to require it to be filed, and cannot be considered on a demurrer to the petition.

5. ————: Demurrers: Petition to be Judged by Its Face on Demurrer. On demurrer a petition must be judged by what appears on its face.

6. ————: Exhibits. Exhibit not Part of Petition, not Considered on Demurrer. An exhibit is no part of a petition, and cannot be used to either aid or condemn it, on demurrer.

7. EVIDENCE: Fire Insurance: That Fire Policy May be Cancelled by Insurer or Insured or by Mutual Consent is Common Knowledge. It is common knowledge that a fire insurance policy may be canceled by the insured as well as the insurer, or by mutual consent.

8. INSURANCE: Not Necessary to Show Validity of Cancellations of Policies, Unless Terms of Policies Necessitated Such Showing, in Order to Recover Commissions from Former Agent. In action on bond against discharged insurance agent to recover commissions on cancelled policies, *held* not necessary for plaintiff company to allege or prove a reason for such cancellation, unless the terms of the policies were such as to make it necessary.

9. PLEADING: Question of Right to Cancel Should Have Been Reached by Motion to Make More Specific. In action on bond of discharged insurance agent to recover commissions on cancelled policies, where petition did not allege reason for such cancellation, or at whose instance cancelled, if defendants desired to reach validity of such cancellations or reasons therefor, they should have done so by motion to make petition more specific in that regard, and not by demurrer.

10. **INSURANCE**: Pleading: Question of Arbitrary Cancellation Could be Raised only by Special Plea in Answer. In action on bond of discharged fire insurance agent to recover unearned commissions on cancelled policies, defendants could raise question of arbitrary cancellation only by special plea in the answer, and burden of proof in that regard would be on them.

11. **EVIDENCE**: Fire Insurance Policies: Cancellation: Common Knowledge That Policy May be Cancelled, if Premium Paid, Before Running Full Time. It is common knowledge that an insurance policy on which the premium has been paid may be cancelled before it has run the full time.

12. ———: ———: ———: Common Knowledge That, When Insurance Policy is Cancelled Before Full Time, Part of Premium Paid Must be Returned to Insured. It is common knowledge that when an insurance policy on which the premium has been paid is cancelled before it has run the full time, part of the premium paid by the insured must be returned to him by the company.

13. **INSURANCE**: Cancellation: Commission of Agent on Cancellation of Policy. When insurer returns to insured unearned portion of premium paid on cancelled policy, insurer's agent is entitled to retain a commission only on amount of premium retained by insurer.

14. **PRINCIPAL AND SURETY**: Contract of Voluntary Surety Construed by Same Rules as Other Contracts. While it is true that voluntary sureties are favorites of the law, and have the right to stand on the strict letter of the obligation they sign, yet the contract of a voluntary surety is to be construed by the same rules as all other contracts, and the language used is to be given its ordinary meaning with a view to carry out the intention of the parties as expressed in the instrument executed by them.

15. ———: Construction of Contract. There should be no strained construction of contract in order to release or hold sureties.

16. **INSURANCE**: Bond, Given by Insurance Agent to Insurer to Return Money Due Insurer, Construed. Bond, given by a fire insurance agent to pay to insurer money due it from time to time for amounts collected or received for premiums for policies and renewals thereof or for any ground construed, and *held* to mean that when the agent collected premiums on insurance policies, the sureties undertook to see that he paid that premium or any part of it to the company whenever it became his duty to pay it, regardless of the contingency which made it his duty to pay it.

17. **PRINCIPAL AND SURETY**: Sureties on Bond Given to Secure Performance of Contract by Principal Held to Have Bound Themselves to Principal's Compliance with Contract. Sureties signing a bond given to secure performance by principal of contract with obligee of bond bound themselves to such principal's compliance with that contract.

18. ———: Liability of Sureties Fixed by Bond and Not by Terms of Contract or Their Knowledge Thereof. Liability of sureties on bond *held* fixed by bond they signed and not by their knowledge at the time of the terms of a contract of employment between principal and obligee of bond.

19. **REFERENCE**: Case Held Properly Referred. In action on bond to recover commissions on insurance policies retained by co-defendant discharged insurance agent, case *held* properly referred to referee, where the alleged breach of the bond required the examination of fifty items, the correctness of which the answer in the form of general denial put in issue.

20. **ATTORNEY AND CLIENT**: Attorney Cannot Contradict Record or Impeach Its Verity by His Mere Statement Conflicting with Record. Where the record showed that attorney for two codefendants represented all of the defendants in entering into a stipulation for a continuance and in interposing a demurrer and certain motions, he could not contradict the record or in any way impeach its verity by his mere statement that he represented only the two codefendants.

21. ———: Attorney for Two Codefendants, Where Three Defendants Were Involved, Should Have Specified in Papers Filed by Him of His Limited Representative Capacity. An attorney for two codefendants, where three defendants were involved, should have specified in papers filed by him for such defendants that he represented only them instead of answering and signing the papers as attorney for "defendants."

22. **APPELLATE PRACTICE**: Record Held to be Construed as Showing That Demurrer and Answer of Codefendants was Filed by All Defendants. Record *held* required to be construed as showing demurrer and answer of codefendants was filed by all defendants.

---

*Headnotes 1. Pleading, 31 Cyc., p. 337; 2. Pleading, 31 Cyc., p. 322; 3. Pleading, 31 Cyc., p. 557; 4. Pleading, 31 Cyc., pp. 285, 647; 5. Pleading, 31 Cyc., p. 323; 6. Pleading, 31 Cyc., p. 560; 7. Evidence, 23 C. J., Section 1838; 8. Insurance, 32 C. J., Section 156; 9. Pleading, 31 Cyc., p. 644; 10.  Insurance, 32 C. J., Section 156; 11. Evidence, 23 C. J.,

Section 1838; 12. Evidence, 23 C. J., Section 1838; 13. Insurance, 32 C. J., Section 156; 14. Principal and Surety, 32 Cyc., p. 71; 15. Principal and Surety, 32 Cyc., p. 74; 16. Insurance, 32 C. J., Section 153; 17. Principal and Surety, 32 Cyc., p. 113; 18. Principal and Surety, 32 Cyc., p. 113; 19. References, 34 Cyc., p. 780; 20. Attorney and Client, 6 C. J., Section 156; 21. Attorney and Client, 6 C. J., Section 159; 22. Appeal and Error, 4 C. J., Section 1711.

Appeal from the Circuit Court of Christian County.—
*Hon. Fred Stewart,* Judge.

REVERSED AND REMANDED (*with directions*).

*Alfred Page* and *Val Mason,* of Springfield, for appellant.

(1) The court should have confirmed the report of the referee, and rendered judgment for the plaintiff as recommended. This for the reason that the testimony of plaintiff's agent was uncontradicted and the testimony of defendant (Nevils) practically admitted the truth of plaintiff's testimony, and the correctness of the account. When this is so the court will say as a matter of law that plaintiff is entitled to recover. Springfield Gas & Electric Co. v. Southern Surety Co., 250 S. W. 78. (2) The court erred in sustaining the demurred to plaintiff's petition. (a) Because the defendants had answered after the demurrer in the first instance, and this waived all defects in the petition except the failure to show jurisdiction or a total failure to state a cause of action. Wolz v. Benard, 253 Mo. 68; State ex rel. v. Brite, 224 Mo. 514. (b) The demurrer was properly overruled in the first instance and it was error to sustain it regardless of the waiver just mentioned. The suit was on account with an itemized statement appended as an exhibit. R. S. 1919, sec. 1258; Commission Co. v. Block, 130 Mo. 668; Connor v. Heman, 44 Mo. App. 346. (c) Plaintiff was not required to set out in the petition, in separate count, each item relied on as a breach of the bond. Rissler v. Insur-

ance Co., 150 Mo. 366. (d) The language of the bond is so plain and explicit that there can be no doubt that it includes the return of the unearned commissions. Evans v. F. & G. Co., 195 Mo. App. 438; Lyonburger v. Krieder, 88 Mo. 165-6.

*J. S. Clarke*, of Ava, for respondent.

The demurrer to appellant's petition should have been, as it was afterwards, sustained. Appellant will not be permitted to cancel its agent's work in procuring these great number of policies, and demand of him the return of the unearned premiums paid back to the policy-holders, without some cause or excuse therefor. This would be taking advantage of appellant's own wrong. Shirt Company v. Sacks, 184 Mo. App. 157; Lewis v. Atlas Mutual Ins. Co., 61 Mo. 534; Pond v. Wyman, 15 Mo. 175; Dobyns v. Edmonds, 18 Mo. App. 307; Williams v. Bank of U. S., 124 N. Y. 184; Pixlee v. Buick Motor Co., 198 S. W. 86; Cape Brewing & Ice Co. v. Kippenberg, 188 Mo. App. 499; Paul Wolff Shirt Co. v. Sacks, 184 Mo. App. 157; Trust Company v. Tindle 272 Mo. 681; Jones v. Alf Bennett Lumber Co., 175 Mo. App. 26. The demurrer being re-filed after answer filed, is deemed a withdrawal of the answer, and although the record does not show the withdrawal of defendant's answer, the refiling of demurrer is equivalent to such withdrawal of the answer. Dunklin Co. v. Clark, 51 Mo. 60; Henley v. Henley, 93 Mo. 95; State ex rel. v. Bright, 224 Mo. 514. The court was fully sustained in its action in sustaining respondent's exceptions to the referee's report, and in refusing to accept said report. In proceedings upon a bond as this one in suit, the measure of liability of such bondsmen is fixed by the terms of the instrument, they signed, and such terms cannot be enlarged or varied by judicial construction. The appellant must stand or fall upon the very terms expressed in the obligation in such bond, and no other. C. H. Albers Com-

mission Co. v. Spencer, 139 S. W. 321; Trust Company
v. Tendel, 272 Mo. 681; Suburban Mutual Building &
Loan Assn. v. J. D. Paulus, 80 Mo. App. 36. In case of
W. T. Raleigh Medical Company v. Modde, the Supreme
Court held that "the liability of a guarantor is strictly
confined within the bonds of his contract. The princi-
pal debtor and creditor can do nothing to increase his
liability. And any attempt on their part to interfere
with the rights or liability of the guarantors, frequently
result in their discharge from liability." In this case
the bond signed by these two defendants undertakes to
indemnify the appellant on account of "all amounts due
or that may become due to it from time to time for monies
collected and received by him for premiums on policies
of insurance and renewals thereof, or on any other ac-
count whatever." These conditions do not make respond-
ents liable for "commissions on unearned returned pre-
miums on cancelled policies." This condition, however,
is inbodied in the agent's contract with plaintiff, but which
contract these respondents did not sign, or even know of.
Appellant, no doubt, had the right to revoke its agent's
contract, as it did, but not to the detriment of the agent,
where the agent, in good faith, performed services, and
expended money by way of expenses, while in the prin-
cipal's services. McCray v. Frost, 181 Mo. App. 672;
Grover v. Henderson, 120 Mo. 367; Burk v. Priest, 50
Mo. 310. The referee held that respondents were held by
the contract as well as the bond. Respondents maintain
they cannot be held for these unearned, returned pre-
miums, as there is no such obligation or condition ex-
pressed or implied in the bond they signed. Burley v.
Hitt, 54 Mo. App. 272; W. T. Raleigh v. Abernathy, 196
S. W. 1042; Fisher v. Cutter, 20 Mo. 206; W. T. Raleigh
Medical Co. v. Modde, 209 S. W. 958. The respondents
were entitled to a trial by a jury. The record in this case
is a short one, and in no way complicated, requiring a
referee to find the facts. The object in securing a ref-
erence, which was a "forced one," was to avoid trial

by jury. Vol. 1, sec. 1426, R. S. 1919; Creve Coeur & Co. v. Tamm, 138 Mo. 385; Thornton v. Life Assn., 7 Mo. App. 544. On page 36 of appellant's printed abstract, J. E. Nevils testifies before the referee that he had never made any appearance, or employed any attorney to represent him, and only appears before the referee as a witness. This was sufficient ground for setting aside the report of the referee, the judgment rendered by him, being a joint judgment against the defendants, Nevils, Singleton and Yoeman. There was no offer to dismiss as to Nevils, and he is still a defendant in the case. R. S. 1919, secs. 1182, 1183 & 1184; In re Condemnation of Land for Opening and Establishing a Parkway in Kansas City, 176 S. W. 529 and 188 Mo. App. 576.

COX, P. J.—J. E. Nevils was agent for plaintiff in writing insurance and executed to plaintiff his bond in the sum of $500 with the other two respondents as sureties. Nevils' agency was terminated by appellant and this suit was brought upon the bond to recover the full amount thereof, the petition alleging that Nevils was indebted to plaintiff in the sum of $524.26. A demurrer to the petition was filed and overruled. Answer was then filed. On motion of plaintiff the case was referred to a referee. The referee heard the evidence and filed a report in which he recommended that judgment be entered in favor of plaintiff for $500, the penalty of the bond. Exceptions to the report of the referee were filed by the sureties, Singleton and Yeoman. The exceptions were sustained but upon what ground does not appear of record. The defendants, Singleton and Yeoman, then re-filed the demurrer to the petition without withdrawing the answer. The court then sustained the demurrer and plaintiff refusing to plead further, judgment was entered against it and it then appealed.

The petition alleged the employment of Nevils as agent for plaintiff and the execution of the bond sued on and alleged the condition of the bond to be in part that

Nevils should pay all sums collected by him and pay un-earned premiums on policies of insurance that might be cancelled. The petition then alleged as a breach of the bond that Nevils had failed to return and pay to plain-tiff the unearned commissions on cancelled policies to the amount of $524.60 and asked judgment for $500, the penalty of the bond.

The demurrer to the petition specified three grounds:

First: That the petition did not state any cause of action against defendants.

Second: Because the petition is based upon a con-tract between the plaintiff and J. E. Nevils and the con-tract or a copy thereof was not filed.

Third: That the bond is so indefinite, uncertain and ambiguous in its terms that it could not be binding upon defendants as alleged in the petition.

Of these in inverse order. It is contended that the terms of the bond do not cover liability for failure to return to plaintiff unearned commission resulting from the cancellation of policies. The condition of the bond is not copied in the petition but the allegation in the pe-tition which pleads the terms of the bond specifically states that it covers unearned commissions on cancelled policies and hence the petition is not open to that ob-jection. Whether the bond in fact covers unearned com-mission on cancelled policies is a question to be deter-mined when the court is called upon to construe the bond and since the bond is not copied in the petition, its con-struction is not involved in considering a demurrer to the petition. The allegations of the petition determine its sufficiency and we hold this petition good as against the third ground of the demurrer.

The second ground is based on the fact that the agency contract between plaintiff and J. E. Nevils or a copy thereof is not filed with the petition. This suit is on the bond and a copy of it is filed. While the agency contract between plaintiff and Nevils would be compe-tent evidence in determining whether or not Nevils was

indebted to plaintiff, the suit was on the bond and not on that contract, hence the bond was the only written instrument that plaintiff was required to file with its petition.

As sustaining our position on the two propositions just discussed, we may say further that when a suit is based on a written instrument executed by the party sued, the statute, section 1270, Revised Statutes 1919, requires that the instrument or a copy thereof be filed with the petition. A failure to file it, however, can only be taken advantage of by motion to dismiss or require it to be filed and cannot be considered on a demurrer to the petition. On demurrer the petition must be judged by what appears on its face and an exhibit is no part of the petition and cannot be used to either aid or condemn it. [Burdsal v. Davies, 58 Mo. 138; The Hann. & St. Joe R. R. Co. v. Knudson, 62 Mo. 569; Peake v. Bell, 65 Mo. 224; Pomeroy v. Fullerton, 113 Mo. 440, 453, 21 S. W. 19; Hickory County v. Fugate, 143 Mo. 71, 79, 44 S. W. 789; Hubbard v. Slavens, 218 Mo. 598, 622, 117 S. W. 1104; Lackawanna Coal & Iron Co. v. Long, 231 Mo. 605, 611, 133 S. W. 35; State ex rel. Greene County v. Lydy, 242 Mo. 316, 146 S. W. 789; Pac. Lime & Gypsum Co. v. Mo. Bridge & Iron Co., 286 Mo. 112, 118, 226 S. W. 853.]

The first ground of demurrer, to-wit, that the petition does not state facts sufficient to constitute a cause of action against defendants rests on the contention that the plaintiff could not cancel policies arbitrarily and require the agent to refund unearned commission but in order to require the agent to return unearned commission on policies cancelled by plaintiff, it must appear that the plaintiff had a good and sufficient reason for cancelling the policies and that the reason for the cancellation must be alleged in the petition and the burden of proof was on the plaintiff to sustain that allegation. If that contention were sound, this petition is not open to that objection because it does not allege that the policies were cancelled by plaintiff. It is common knowl-

edge that the insured as well as the insurer may cause an insurance policy to be cancelled or it may be done by mutual consent. This petition does not allege at whose instance the policies were cancelled and hence is not open to the objection made against it. We are of the opinion, however, that if plaintiff did, of its own volition, cancel the policies, it is not necessary for plaintiff to allege or prove a reason for so doing unless the terms of the policies are such as to make it necessary. The terms of the policies which govern the question of the right to cancel are not set out in the petition and if defendants desire to reach that question, they should have asked that the petition be made more specific in that regard. It occurs to us that unless there is some provision of the policies cancelled that controls, the question of an arbitrary cancellation, which means a cancellation without reason and for some sinister purpose, could only be raised by special plea in the answer and the burden of proof on that question would be on defendants.

We do not think the petition open to the objections raised against it and hold that the court erred in sustaining the demurrer to it.

It is insisted by appellant that the judgment should be reversed and the cause remanded with directions to enter judgment on the report of the referee. This upon the alleged ground that there was no substantial conflict in the evidence and that judgment for plaintiff as recommended by the referee is the only judgment that could properly be entered on the facts as shown by the evidence and found by the referee. Respondents contend that on the evidence plaintiff could not recover because the bond does not cover the items sued for and for the further reason that there was no showing by plaintiff that it had any just cause to cancel the policies.

On the question of the necessity for plaintiff to show a reason to cancel the policies, we have already held adversely to respondents' contention. The next question is does the bond cover the unearned commission on can-

celled policies? The condition of the bond as far as pertinent here is as follows: "That if the above bonded J. E. Nevils as agent of the said Company shall faithfully and punctually pay over to the said Company all amounts due or that may become due to it from time to time for monies collected or received by him for premiums on policies of insurance and renewals thereof or for any ground whatever." It will be observed that the condition of the bond does not specifically mention money that may be due the company as unearned commission on cancelled policies. It does, however, require the agent to "faithfully and punctually pay over to the said Company all amounts due or that may become-due to it from time to time for monies collected or received by him for premiums on policies of insurance and renewals thereof." We think that provision covers unearned commissions on cancelled policies. The commission due the agent comes out of the premium collected by him from the insured. The bond requires him to pay to the company all amounts due or that may become due to it from time to time for money received by him for premiums on policies and renewals. When the premium on a policy was paid, all of that premium except the commission of the agent was then due the company and it was the duty of the agent to punctually pay it to the company. It was just as certainly the duty of the agent to pay to the company any part of the premium collected by him that should thereafter become due to it from time to time as just as certainly the duty of the agent to pay to the company. When premiums are paid, the agent retains at the time his entire commission on the supposition that the policy will remain in force for the full term for which it was written, and if it did, then there would be no more to become due to the company out of the premium collected, but it is common knowledge and these sureties on this bond must have known when they signed the bond that an insurance policy on which the premium has been paid may be cancelled before it has run the full time

217 Mo. App.—41.

and that when that occurs, part of the premium paid by the insured must be returned to him by the company. When that is done, then the agent is only entitled to retain his commission on the amount of premium retained by the company after returning the unearned portion of the premium to the insured. Therefore, upon the happening of that event, the part of the premium retained by the agent as commission which is unearned becomes at that time due the company from the agent and is covered by the provision of the bond which requires the agent to pay to the company amounts that may become due it from time to time for monies collected by him as premium on policies of insurance secured by him as agent for the company. This seems to us to be a fair and reasonable construction of the terms of the bond. While it is true, as contended by respondents, that voluntary sureties are the favorites of the law and have the right to stand on the strict letter of the obligation they sign as has often been held by the courts of this State for which see Pemiscot County Bank v. Tindle, 272 Mo. 681, 695, 199 S. W. 1025, et seq.; Saginaw Medicine Co. v. Dykes et al., 210 Mo. App. 399, 405-6, 238 S. W. 556, and many other cases that might be cited, yet the same cases, and many others, also hold that the contract of a voluntary surety is to be construed by the same rules as all other contracts and the language used is to be given its ordinary meaning with a view to carry out the intention of the parties as expressed in the instrument executed by them. "There should be no strained construction in order to release or hold the sureties." [Beers v. Wolf, 116 Mo. 179, 184, 22 S. W. 620; Mo. Kan. Tex. Ry. Co. v. American Surety Co., 291 Mo. 92, 122, 236 S. W. 657; Evans v. U. S. Fidelity & Guarantee Co., 195 Mo. App. 438, 443, 192 S. W. 112.]

Applying these rules of construction to the bond before us we hold that it expresses the intention of the parties that the sureties should be bound for the failure of the agent to pay to the county any amount that should

become due the company from him on account of premiums received by him whether it became due the company as soon as paid the agent or. should become due from time to time thereafter by the cancellation of policies which would reduce the amount the agent would be au· thorized to retain as commission upon premiums collected by him. In other words, when the agent collected premiums on insurance policies the sureties undertook to see that he paid that premium or any part of it to the company whenever it became his duty to pay it re· gardless of the contingency which made it his duty to pay it. The sureties both testified that they did not know the terms of the contract between the company and the agent Nevils when they signed the bond. We do not regard that as material. Their liability was fixed by the bond they signed and not by their knowledge at the time of the terms of the contract between the agent and the company. The bond itself was given to secure the per-- formance by Nevils of his contract with the company and the sureties must have known that fact when they signed the bond and by signing the bond they bound themselves to see that the agent complied with that contract as far as it related to his paying to the company any amount of money that might from time to time become due from him to the company on account of premiums collected by him.

Respondents insist that the case should not have been referred but should have been tried by a jury. The alleged breach of the bond required the examination of some forty-nine or fifty items. The answer was a general denial which put in issue the correctness of each of these items. It is apparent that it would have been impossible for a jury to carry these items in mind and render a correct verdict on each and all of them. Under the pleadings we think the case was properly referred.

Appellant asks that the judgment be reversed and the cause remanded with directions to enter judgment for plaintiff on the report of the referee. There were a

few items in the account of plaintiff that the evidence for defendant disputed and in view of that we are not disposed to order judgment entered for plaintiff.

Respondents raise the point that no judgment could be rendered on the report of the referee against defend-ant Nevils because he was never served with process nor voluntarily appeared. The record before us shows that the answer was filed by "defendants;" that at one time a stipulation for a continuance was entered into between plaintiff and "defendants;" that the demurrer to the petition was filed by "defendants;" that a motion to strike out part of the petition was filed by "defendants." When the referee began to take testimony Mr. Clarke, attorney, announced that he appeared for "defendants" Singleton and Yeoman, but did not then and never had appeared for Nevils by filing a demurrer or answer for him. We do not understand that an attorney can by a statement of that kind contradict the record or in any way impeach its verity. We gather from his statement that when he filed the demurrer and answer and signed them as attorney for "defendants" he intended to file it for defendants Singleton and Yeoman alone and did not intend to include Nevils therein, but if that were his intention he should have specified in the papers filed that it was being filed as a separate demurrer or answer of those two defendants. As it stands we must construe the record as showing a demurrer and an answer filed by all defendants, including Mr. Nevils. The term "defend-ants" standing alone as it does in this record means all defendants and hence we hold that on the record before us, Mr. Nevils is in court the same as the other defend-ants. When the case again reaches the circuit court, the same remedies will be open to Mr. Nevils that were available to him before the case was tried.

The judgment will be reversed and the cause re-manded to the end that the judgment of dismissal against plaintiff and the order sustaining the demurrer to the

petition may be set aside, the demurrer overruled and the cause proceeded with in accordance with this opinion. *Bradley* and *Bailey, JJ.*, concur.