THOMAS C. MCGILL and HELEN MCGILL, Respondents, v. WALTER HAMPTON, EVELYN HAMPTON and JACK BARNES, Appellants.— 268 S. W. (2d) 74.

Springfield Court of Appeals. Opinion filed May 20, 1954.

*Riddle & Baker,* for respondents.

*William B. Sharp,* for appellants.

770

BLAIR, J.—This is an appeal involving the action of the Circuit Court of Dunklin County, in approving the report and suggestions of the referee, previously appointed by the court, recommending to the court that the judgment of the trial court should be in favor of plaintiffs and against the defendants. Appellant Barnes was the Sheriff of Dunklin County and acted as substitute for the trustee named in the deed of trust, under consideration, and had no further interest in the case.

Respondents Thomas C. McGill and Helen McGill, husband and wife, were the plaintiffs below, and will be referred to only as plaintiffs in this opinion. Walter Hampton and Evelyn Hampton, husband and wife, appellants here, were defendants in the trial court, and will be so referred to in this opinion.

The petition filed by plaintiffs alleged that defendants Hampton made a trade with plaintiffs McGill for land adjoining the city of Malden, described as follows:

"All of that tract or parcel of land described as follows:

Beginning Two Hundred (200) feet North of the Southwest corner of Outlet One (1) in the South Side Addition to the city of Malden, Missouri, and running thence North fifty (50) feet; thence East Three Hundred (300) feet; thence South Fifty (50) feet; thence West Three Hundred (300) feet to the place of beginning, and to be known hereafter as Lot Six (6) in Roussel's Addition to the City of Malden, Missouri".

Plaintiffs executed a deed of trust to secure a balance of $600.00 due from plaintiffs and payable to defendants Hampton, as specified in said deed of trust.

Defendants Hampton, in their answer, claimed that the description in the deed they gave plaintiffs was the same land described in the deed from Hamptons' grantors. Defendants claimed that a mutual mistake was made and that they did not intend to convey to plaintiffs McGill more land than the 300 feet conveyed to defendants Hampton in the deed from the former owners.

Plaintiffs refused to make the payments provided for in the deed of trust and defendants threatened to foreclose the deed of trust. Plaintiffs brought an injunction suit to prevent such fore-

closure and alleged that defendants Hampton had only 150 feet on the west side of the tract described, instead of 300 feet. The trial court required the plaintiffs to give a temporary injunction bond. The 150 feet at the east end of the tract belonged to one Charles Leathers, about whose ownership there was no dispute.

The trial court appointed Honorable John H. Bradley, as referee. The parties gave their evidence to said referee, and he reported to the trial court. We do not find any agreement in the pleadings that the trial court should appoint a referee. Such agreement was not·necessary, as the trial court had the inherent power to make such an appointment.

Buchanan v. Rechner, 333 Mo. 634, 62 S.W. (2d) 1071, l.c. 1072; Fitzgerald v. Hayward, et al. 50 Mo. 516; Home Exchange Bank v. Koch, et al. 326 Mo. 369, 32 S.W. (2d) 86; Phillips v. Todd, 180 S.W. 1039, l.c. 1043; Sidway v. Mo. Land & Live Stock Co. Ltd. 187 Mo. 649, l.c. 677, 86 S.W. 150, l.c. 158; National Union Fire Ins. Co. v. Nevils, et al., 217 Mo. App. 630, (19), 274 S.W. 503, l.c. 507.

The appointment of the referee was made on January 8, 1951. The referee was a man of long experience, both as a lawyer and as a judge. The transcript is mostly filled with the testimony of the various witnesses who appeared before the referee.

From the report of the referee, the trial court was justified in finding that a hard rain prevented plaintiffs from seeing the fence at the west side of the land owned by Leathers, and that when plaintiffs returned the next day, the weeds on the east side of the 150 feet were so high that plaintiffs were unable to see the fence of Leathers. They merely assumed that defendants were trading to them the 300 feet described in the deed of trust.

On the other hand, defendant Walter Hampton and his wife, testified that Leathers' fence could readily be seen from the house on the lot plaintiffs were getting from them, and that there was an outside toilet on the east side of that lot, with a path leading to ·the same.

The consideration for the trade was a tractor and equipment, on which plaintiff Thomas C. McGill was indebted in a large sum. The parties finally traded and defendants conveyed to plaintiffs the strip of land 300 feet east and west, and accepted from them as a back payment an agreement to make an additional payment of $600.00, with interest thereon, as specified in the deed of trust.

Plaintiff Thomas McGill testified before the referee that defendant Walter Hampton told him before the deed of trust was executed that there was 50 feet by 300 feet in the lot. Mrs. Hannah Jones testified that the weeds in the back yard were higher than her head and were very thick. Defendant Hampton was not present the next day, when plaintiffs said the weeds at the east end of the lot were too high to permit them to see the fence of Charles Leathers. Defendant Mrs.

Hampton testified that she was in the car the day it was raining and heard defendant Walter Hampton point out to plaintiff Thomas C. McGill where the lot ran to. She said that defendant Walter Hampton told McGill "that he thought the lot was like it was here." (Indicating the Pickard deed to defendant Walter Hampton.) Alma Huntington testified for defendants. She said she saw plaintiff McGill go out on the back porch and look around, and she paid no further attention to him.

. The referee, in his report to the trial court said:

"Defendants say in effect that plaintiffs saw what they purchased and purchased what they saw after seeing it, and that therefore the description in the deed describing the lot as 300 feet deep was just a mutual mistake and can be reformed, citing Net Realty & Investment Co. v. Dubinsky (Mo. App.) 94 SW (2d) 1108 and other cases.

"If the mistake was mutual as defendants suggest then the law is as defendants say. But under the evidence the referee finds as above; that the mistake was not mutual."

The referee then made the following suggestions to the trial court:

"(1) That the temporary injunction be made permanent.

"(2) That it be found and adjudged that plaintiffs owe defendants only $300.00 as the balance due on the purchase price of the lot purchased by plaintiffs from defendants on July 18, 1950.

"(3) That plaintiffs be given 60 days from the date of entry of judgment to pay said $300.00 to defendants; that said $300.00 bear interest at 8% from July 18, 1950, to October 6, 1950, date that this cause was filed, and that said $300.00 bear interest at 8% from date of entry of judgment to date of payment of said $300.00 on or prior to the lapse of 60 days from date of entry of judgment.

"(4) That upon payment of said $300.00 plus interest as above specified, said note for $600.00 and deed of trust securing same be cancelled and the record of said deed of trust be satisfied.

"(5) That if plaintiffs fail, neglect or refuse to pay said $300.00 with interest as aforesaid and with the time as aforesaid, then said note and deed of trust shall be valid instruments for the sum of $300.00 plus interest at 8% from July 18, 1950 the date of said note and deed of trust to October 6, 1950, the date the cause was filed and plus interest at 8% from the date of entry of the judgment.

"(6) That the costs accrued in this cause be taxed against defendants."

The judgment of the trial court was in almost the identical language of the report of the referee. The judgment was:

"It is therefore ordered, adjudged and decreed by the Court that the temporary injunction entered by the Court be, and the same is hereby, made permanent and the defendants, and each of them and their agents, attorneys, servants and employees be, and they are

hereby, perpetually enjoined and restrained from proceeding with foreclosure heretofore begun under the deed of trust executed by the plaintiffs to the defendants Walter Hampton and Evelyn Hampton and recorded in the office of the Recorder of Deeds, Dunklin County, in book TR 123 at p. 600; that the plaintiffs are indebted to the defendants Walter Hampton and Evelyn Hampton in the sum of $300.00 with interest at 8% from July 18, 1950 to October 6, 1950 with further interest at 8% from the date hereof to the date of payment of $300.00; that upon the payment of said $300.00 and interest as above specified the promissory notes in the amount of $600.00 made and executed by the plaintiffs to the defendants Walter Hampton and Evelyn Hampton on the 18th day of July, 1950 and the deed of trust as above set forth be cancelled and said deed of trust satisfied of record; that if plaintiffs fail, neglect or refuse to pay said $300.00 and interest as above specified within sixty days from the date hereof the aforesaid note and deed of trust shall be valid instruments for the sum of $300.00 and interest as above specified; that the referee be, and he is hereby, allowed a fee of $50.00 together with his actual costs incurred as such referee to be taxed as expenses in this case and that all costs of this action be, and they are hereby, assessed against the defendants Walter and Evelyn Hampton.''

We have carefully considered the report of the referee and feel that the evidence before him completely justified his suggestions to the trial court, and that the trial court was fully justified in believing that plaintiffs had well borne the burden of proving their case by the preponderance of the testimony.

Defendants filed a motion for a new trial, which was overruled by the trial court. We think it should have been overruled, and that the judgment of the trial court should be affirmed.

It is so ordered. *McDowell, P.J.*, and *Stone, J.*, concur.